UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| | ) |
| | ) |
| UNITED STATES | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 11-10416-DJC |
| KELLY BLACK-WHITE, | ) |
| ALBERT REDA, and | ) |
| STEPHEN STUART | ) |
| | ) |
| | ) |
| | ) |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                    **May 16, 2013**

I.      Introduction

Defendants Kelly Black-White ("Black-White") and Stephen Stuart ("Stuart") have

separately moved to dismiss Count 1 of the Superseding Indictment (the "Indictment") against

them.  D. 44; D. 54.  Black-White has also moved to dismiss counts 2-4 and 9.  D. 44.  For the

reasons stated below in this Memorandum and Order, the Court DENIES both motions.

II.      Factual Background

The Court presumes the allegations of an indictment to be true for the purposes of

assessing its sufficiency.  United States v. Dunbar, 367 F. Supp. 2d 59, 60 (D. Mass. 2005);

United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).  Applying this

rubric, the Court recites the relevant facts as follows:

At all relevant times, Defendant Kelly Black-White was a Director of Symbollon

Pharmaceuticals, Inc. ("Symbollon"), a Delaware corporation, whose stock was publicly quoted

on OTC Markets, Inc. ("OTC"), an off-exchange "inter-dealer electronic quotation and trading

system in the over-the-counter securities market." D. 11 at 1.  Defendant Stephen Stuart was the

Chief Executive Officer of ComCam International, Inc. ("ComCam"), a Delaware corporation,

whose stock was also publically quoted on OTC.  Id. at 2, 8.   Sometime prior to June 13, 2011,

Black-White communicated with an individual whom the Indictment has identified as "E.H."  Id.

at 4.  E.H. informed Black-White that an individual, who purported to be the representative of a

major investment fund (the "Fund"), but was actually an undercover agent (the "UA") of the

Federal Bureau of Investigation ("F.B.I."), was willing to invest the Fund's money in companies

in exchange for a fifty-percent kickback to the UA.  Id.  On or about June 13, 2011, Black-White

and the UA met and discussed the details of this arrangement.  Id.  They agreed that Black-White

would refer the UA to representatives of publically traded companies.  Id.  After the UA invested

in these companies, their representatives would transfer 50 percent of the UA's investment to

UA's bank account as a kickback.  Id.  The UA, would in turn, remit ten percent of the kickback

to a bank account controlled by Black-White as a finder's fee.  Id. at 5.

Prior to the June 13, 2011 meeting, Black-White had already referred the UA to

executives at Symbollon and MicroHoldings, Inc., "so that those executives could enter into a

funding/kickback agreement with [the] UA."  Id. at 5.  Also prior to this meeting, Symbollon

made three wire transfers totaling $54,000 to a Citizens Bank account controlled by the UA.  Id.

at 11.  During the same time period, MicroHoldings, Inc. also made two wire transfers totaling

$24,000 to the same Citizens Bank account.  Id. at 11-12.  The Indictment also alleges that other

corporations, including Stuart's company, ComCam, and Defendant Albert Reba's company, 1st

Global Financial, Inc.,[1] made several additional wire transfers to the UA and that the UA made several wire transfers to a JP Morgan Chase account controlled by Black-White.  Id. at 11-15.

III.     **Procedural History**

The government has charged Black-White with one count of conspiracy to commit securities fraud in violation of 18 U.S.C. §§ 1348, 1349, id. at 10 (Count 1), and eleven counts of wire fraud in violation of 18 U.S.C § 1343.  Id. at 11-13, 15 (Counts 2-11, 13).  The government has charged Stuart with one count of wire fraud, id. at 15 (Count 13), and one count of mail fraud in violation of 18 U.S.C. § 1341.  Id. at 16 (Count 14).  In each wire fraud count and in the mail fraud count, the government alleges that the defendants not only engaged in the substantive offense in violation of 18 U.S.C. §§ 1341 and/or 1346, but also conspired to commit mail fraud and/or wire fraud in violation of 18 U.S.C. § 1349.  D. 11 at 11-16.

Black-White has moved to dismiss Counts 1-4 and 9 of the Indictment, arguing that the Indictment fails to allege facts sufficient to state charges of wire fraud or a conspiracy to commit securities fraud.  D. 44 at 1.  Specifically, Black-White argues that the Indictment does not adequately allege facts indicating that she had the requisite intent to commit either the securities fraud conspiracy, Count 1, or certain of the substantive counts of wire fraud, Counts 2-4 and 9. Id.

On January 3, 2013, Stuart moved to dismiss Count 1 of the Indictment to the extent the government has charged Stuart.  D. 54 at 1.  Stuart noted that Count 1 alleges a conspiracy to commit securities fraud and that the government named only Black-White in this count.  Id.

IV.     **Discussion**

---

[1] As Defendant Albert Reba has not moved to dismiss the Indictment, the Court does not address the government's charges against him.

Defendants challenging the sufficiency of an indictment bear a heavy burden.   United

States v. Troy, 618 F.3d 27, 34 (1st Cir. 2010).  "A court should exercise its authority to dismiss

cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the

grand jury.'"   United States v. Thomas, 519 F. Supp. 2d 141, 143-44 (D. Me. 2007) (quoting

Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995)).  Courts generally deem an

indictment sufficient if it "describes all of the elements of the charged offense using the words of

the relevant criminal statute."   United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) (citing

Hamling v. United States, 418 U.S. 87, 117 (1974)).  An indictment need only give notice of the

charges to the defendant.   United States v. Brown, 295 F.3d 152, 154 (1st Cir. 2002).

Indictments need not plead the elements of the offense with "infinit[e] specific[ity], especially

when "charging papers contain[] considerable contextual detail."   United States v. Sepulveda, 15

F.3d 1161, 1192 (1st Cir. 1993).

**A.     Black-White's Motion to Dismiss Fails Because the Factual Allegations in the Indictment are Sufficient and the Indictment State the Elements of the Crimes Charged**

Black-White has moved to dismiss those counts of the Indictment that relate to her

referral of Symbollon, namely the conspiracy to commit securities fraud (Count 1) and the

related substantive counts of wire fraud (Counts 2-4 and 9).  Black-White argues that Count 1 of

the Indictment fails to allege facts sufficient to support the government's allegations that Black-

White conspired to commit securities fraud.   To support a charge of securities fraud, the

government must allege:  (1) fraudulent intent; (2) a scheme or artifice to defraud; and (3) a

nexus with a security.  United States v. Mahaffy, 693 F.3d 113, 125 (2d Cir. 2012).  To succeed

on a claim of conspiratorial liability, the government must demonstrate:  "(1) that an agreement

existed to commit the particular crime; (2) that the defendant knew of the agreement; and (3) that

he voluntarily participated in it." United States v. Wyatt, 561 F.3d 49, 54 (1st Cir. 2009) (affirming conviction for violation of 18 U.S.C. § 1349).

Black-White's challenge to this charge focuses on the government's purported failure to allege her knowledge of the alleged agreement and her voluntary participation in the conspiracy. Her principal support for this contention is that the Indictment alleges that Symbollon had already started to remit portions of the UA's purported investments to the UA over one month prior to Black-White's June 13, 2011 meeting with the UA when Black-White and the UA agreed on Black-White's "fee" for introducing the UA to various executives. D. 44 at 4. For this reason, Black-White contends, the Indictment fails to allege that at the time Black-White referred the UA to Symbollon, she had the requisite knowledge and intent to conspire to commit securities fraud. Id. This argument fails for two reasons.

First, as the government correctly points out, Black-White mischaracterizes the Indictment. D. 52 at 5. The Indictment does in fact allege that Black-White was aware of and participated in the conspiracy prior to June 13, 2011. Specifically, the government has alleged that Black-White knowingly facilitated the "funding/kickback" agreement between Symbollon and MicroHoldings and the UA prior to her June 13, 2011 meeting with UA. D. 11 at 5. The fact that prior to June 13, 2011, Black-White and the UA may not have agreed upon how the UA would compensate Black-White is of no legal consequence, especially since the Indictment alleges that Black-White had already agreed to refer the UA to executives for the express purpose of arranging fraudulent investments. Id.; see also Salinas v. United States, 522 U.S. 52, 63 (1997) (noting that a "conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense" as long as conspirators "pursue the same criminal objective"); United States v. Holte, 236 U.S. 140, 144 (1915) (observing that "plainly a

person may conspire for the commission of a crime by a third person"). The timing of the Symbollon's first payment to the UA does not render insufficient the Indictment's factual support for Black-White's intent to conspire. Moreover, the language in the Indictment tracks the statutory language, a matter that Black-White appears to concede. D. 44 at 4.

Second, whether Black-White had sufficient knowledge of the conspiracy is an issue of fact. Issues of fact that bear on the "general issue" of guilt or innocence are properly left for the jury. Fed. R. Crim. P. 12(b)(2); see also United States v. Barletta, 644 F.2d 50, 58 (1st Cir. 1981) (observing that the "general issue" for trial is the guilt or innocence of the defendant). It would therefore be improper for the Court, at this stage, to evaluate the sufficiency of the government's evidence as to Black-White's *mens rea*, and the Court declines to do so. See United States v. Spring, 810 F. Supp. 2d 331, 336 (D. Me. 2011) (denying motion to dismiss indictment where "motion attempts to test the sufficiency of an indictment by testing the sufficiency of the evidence to support the Indictment"); United States v. Pearson, No. 12-CR-84-01-PB, 2013 WL 498167, at *1 (D. N.H. Feb. 7, 2013) (denying motion to dismiss wire fraud count for lack of allegations relating to defendant's *mens rea* where indictment alleged only that the defendant "devised and intended to devise a scheme and artifice to defraud") (citing United States v. Henderson, 416 F.3d 686, 692-93 (8th Cir. 2005)).

The substantive counts of wire fraud related to Black-White's alleged referral of Symbollon, Counts 2-4 and 9, shall also stand. To prevail on a wire fraud charge, the government must prove: (1) a scheme to defraud or to obtain money or property by means of false or fraudulent pretenses; (2) Black-White's knowing and willful participation in this scheme with an intent to defraud; and (3) the use of interstate or foreign wire communications in furtherance of this scheme. United States v. Denson, 689 F.3d 21, 24 (1st Cir. 2012) cert.

denied, 133 S. Ct. 996 (2013).  As with her challenge to the sufficiency of the factual allegations

as to the securities fraud conspiracy count, Black-White's challenge to the wire fraud counts

turns upon her contention that the Indictment fails to allege that she knowingly participated in

the scheme to defraud given the timing of the June 13, 2011 meeting with the UA and the events

that preceded and followed this meeting.  D. 44 at 6-8.  For the reasons discussed above as to

Count 1, this argument also fails since there are sufficient factual allegations to allege that she

participated in the scheme with the requisite knowledge and intent.[2]

The Indictment accurately recites the elements for each count that Black-White

challenges and alleges facts which either directly or inferentially satisfy the elements of the

relevant offenses.  Wells, 766 F.2d at 22.  Accordingly, the Court DENIES Black-White's

motion to dismiss.

**B.      Stuart Cannot Seek to Dismiss Count 1, Where the Government Has Not
         Named Stuart as a Defendant in That Count**

Stuart's motion arises from some confusion as to which charges the government has

levied against each of the individual defendants.  The government has acknowledged that it

intends to proceed against Stuart on a conspiratorial theory of liability.  D. 54-1 at 2-3.  Stuart,

meanwhile, has identified only one count, Count 1, in which the government has elected to

---

[2]  With respect to Black-White's challenge to Count 9, it appears that Black-White is arguing
that because the wire transmission underlying the government's allegation of fraud, a $4,500
wire transfer from the UA's bank account to Black-White's bank account, occurred on June 22,
2011, after the UA had received a kickback from Symbollon, this demonstrates that Black-White
did not have knowledge of the arrangement until after the alleged fraud had taken place.  D. 11 at
8.  However, this argument is inconsistent with the government's allegation that through this
transaction, Black-White obtained money by false pretenses, specifically a portion of the
proceeds that the UA received as part of the kickback conspiracy, which was part of the scheme
that involved the June 13, 2011 meeting.  Id. at 5.  That is, for the reasons discussed above, to the
extent that Black-White argues that she lacked the requisite *mens rea* to commit wire fraud – on
any theory of liability – that argument is unavailing here, as it was with respect to her arguments
relating to Count 1 and the other wire fraud counts she challenges.  The Court therefore declines
to dismiss Count 9.

include § 1349, which prohibits conspiring to commit various categories of fraud including mail fraud, wire fraud and securities fraud, in its heading.  D. 11 at 10.

The Court appreciates Stuart's confusion, but recognizes that a careful reading of the Indictment should clear up any uncertainty.   Count 13 does reference only one statutory provision, 18 U.S.C. § 1343, in its title.   D. 11 at 15.   However, the last sentence of that count alleges that Stuart's conduct violated "Title 18, United States Code, Sections 1343, 1349 and 2." Id.  The same is true as to Count 14, the mail fraud count against Stuart that also charges conduct "[a]ll in violation of Title 18, United States Code, Sections 1341, 1349 and 2."  Id. at 16.  As 18 U.S.C. § 1349 makes it unlawful to conspire to commit a number of offenses, including §§ 1341 and 1343, Counts 13 and 14 indicate that the government has charged Stuart with a conspiracy to commit wire fraud and that Stuart is on notice of same.  The government is free to proceed against Stuart under multiple theories of liability for the same offense through a single count. United States v. Masson, 582 F.2d 961, 963 (5th Cir. 1978) (affirming conviction where substantive offense and aiding and abetting charged in the same count and finding that that count was not duplicitous); see also United States v. Vasquez-Castro, 640 F.3d 19, 24 (1st Cir. 2011) (noting that a jury may be instructed as to vicarious co-conspirator liability, see Pinkerton v. United States, 328 U.S. 640 (1946), even if indictment does not plead vicarious liability).  The government therefore has provided adequate notice of the charges against Stuart.  Brown, 295 F.3d at 154.  Moreover, as Stuart correctly argues and the government does not contest, he is not named in Count 1 and therefore has no standing to move to dismiss that Count.  For all of these reasons, the Court DENIES his motion to dismiss Count 1.[3]

---

[3] Stuart has indicated his intention to move to sever the allegations against him.  D. 54 at 8 n.10. However, given that Stuart has filed no such motion, the Court need not and does not address severance here.

**V.      Conclusion**

For the foregoing reasons, the Court DENIES both Black-White's motion to dismiss Count 1-4 and 9 of the Indictment, D. 44, and Stuart's motion to dismiss Count 1 of the Indictment, D. 54.


**So ordered.**

/s/ Denise J. Casper
U.S. District Judge
